# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER PRICE, | ) | **FILED: JULY 31, 2008** |
| | ) | **08CV4341** |
| Plaintiff, | ) No. | **JUDGE GRADY** |
| | ) | **MAGISTRATE JUDGE VALDEZ** |
| vs. | ) Judge | **AEE** |
| | ) Magistrate Judge | |
| CITY OF CHICAGO, | ) | |
| Chicago Police Officer | ) | |
| DOMING ENRIQUEZ, Star 16380, and | ) | Jury Demand |
| Unknown Chicago Police Officers | ) | |
| John Does and Jane Roes 1-25; | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

1.      This is an action for money damages brought pursuant to 42 U.S.C. § 1983 and the common law of the State of Illinois.

2.      Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a).

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

### Parties

4.      Plaintiff is a resident of Chicago, Illinois. At all relevant times, Plaintiff lived in a building located at 641 North Laramie Avenue in Chicago. The building has three separate apartment units: one in the basement, one in the first floor, and one in the second floor.

5.      Defendant police officers are duly appointed and sworn Chicago police officers. At all times relevant to this Complaint, the Defendant-Officers were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation.

6.      The Defendant-Officers are sued in their individual capacities.

7.      Defendant CITY OF CHICAGO is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant-Officers.

### Facts

8.    On four different occasions from about November 2005 to December 2007, Chicago police officers obtained a search warrant and searched Plaintiff's home located at 641 North Laramie Avenue in Chicago.

9.    No contraband or evidence of criminal activity was recovered from any of the searches.

10.    On each occasion, Chicago police officers violated Plaintiff's rights protected by the Constitution of the United States and the common law and statutes of the State of Illinois.

11.    The building at 641 North Laramie Avenue is a multi-unit building. At all times relevant to this complaint, Plaintiff lived in the second-floor apartment.

**Search Number One**

12.    Upon information and belief, the first time that Chicago police officers came with a search warrant, the warrant called for the search of Plaintiff's brother Edward, who stayed in the basement apartment.

13.    When police officers arrived, they kicked in the door to the first-floor apartment which was occupied by Plaintiff's mother. At that time, Plaintiff was in his apartment on the second floor.

14.    Plaintiff went downstairs after he heard the forced entry into his mother's apartment.

15.    When Plaintiff got downstairs, Plaintiff was seized at gunpoint and handcuffed.

16.    Plaintiff's mother and grandmother were also seized.

17.    Some police officers went upstairs and searched Plaintiff's second-floor apartment. Police officers also searched the other apartments in the building.

18.    Plaintiff's father was a Cook County sheriff; he died in 2003. Police officers found his uniform and vest. Plaintiff explained that they belonged to his deceased father.

19.    During the search of Plaintiff's apartment, police officers seized about $700.00 in United States currency.  A receipt was not given, and the money has never been returned.

20.    Police officers also seized and converted video games and movies from Plaintiff's apartment.

21.    Before the officers left, Plaintiff was asked to fill out a contact card.

**Search Number Two**

22. About two months later, in December of 2005, Chicago police officers returned to Plaintiff's home with a search warrant.

23. This search warrant called for the search of Plaintiff and a "single-family residence" located at 641 North Laramie Avenue in Chicago.

24. Plaintiff was sleeping when the police officers arrived. Plaintiff woke up when they forcibly entered the building.

25. Police officers handcuffed Plaintiff and searched his apartment. No contraband or evidence of criminal activity was found.

26. Plaintiff was also searched, and no contraband was found.

27. During the search of Plaintiff's apartment, police officers seized about $900.00 in United States currency. A receipt was not given, and the money has never been returned.

28. The police officers left after they finished the search.

**Search Number Three**

29. In June of 2006, Chicago police went to Plaintiff's home to execute a search warrant authorizing the search of Plaintiff and his "2nd floor apartment located at 641 North Laramie Avenue" in Chicago.

30. Nobody was home when the officers arrived.

31. Prior to the officer's arrival, Plaintiff had left to go to McDonald's for breakfast.

32. While Plaintiff was driving home, police officers stopped him and surrounded his car. After the cars stopped, police officers approached Plaintiff with their guns pointed at him.

33. Approaching Plaintiff with the pointed guns constituted excessive force.

34. Police officers asked Plaintiff if he was Christopher Price.

35. Plaintiff replied that he was.

36. Plaintiff was handcuffed.

37. Plaintiff was searched. No contraband or evidence of criminal activity was found.

38. A police officer got into Plaintiff's car.

39. Plaintiff was placed in the back of a police car.

40. Plaintiff was under arrest.

41. Defendant-Officers did not have an arrest warrant, probable cause or any other legal justification to arrest Plaintiff.

42.    Police officers drove to Plaintiff's house with Plaintiff. When they arrived, other police officers were already searching the home.

43.    Police officers also searched Plaintiff's yard and cars in back.

44.    The police officers did not have a search warrant or any other legal justification to search the yard or cars in the back.

45.    Plaintiff remained in the police car in handcuffs while police officers continued to search his house, yard and cars.

46.    No contraband or evidence of criminal activity was recovered from any of these searches.

47.    During the search of Plaintiff's apartment, police officers seized about $700.00 in United States currency. A receipt was not given, and the money has never been returned.

48.    After the search was completed, Defendant-Officers took Plaintiff to a police facility located near Homan and Fillmore. Inside the building there, police officers interrogated Plaintiff seeking information about drug dealers.

49.    An officer told Plaintiff that he had "three months" to come up with the names of three people who had drugs or guns. The officer told Plaintiff that if he did not do it, the officer would put a warrant out for Plaintiff. This officer gave Plaintiff his phone number.

50.    Plaintiff was released and went home.

**Search Number Four**

51.    The most recent search took place at Plaintiff's apartment at about 9:00 p.m. on or about December 5, 2007.

52.    After they arrived, police officers knocked on Plaintiff's door.

53.    Plaintiff opened the door.

54.    Defendant-Officer ENRIQUEZ and other police officers rushed in to Plaintiff's apartment with their guns pointed at Plaintiff.

55.    Plaintiff was ordered to get on the wall.

56.    Plaintiff got on the wall.

57.    Plaintiff was handcuffed.

58.    Police officers searched Plaintiff's apartment. No contraband was found.

59.    After about 30 minutes, one Defendant-Officer got sick of searching and not finding anything. This officer grabbed and kicked Plaintiff while asking him, "Where's the shit

at?"

60.     In response, Plaintiff repeatedly said that he did not have anything.

61.     The Defendant-Officer kept saying to Plaintiff that even if Plaintiff did not have anything, then Plaintiff knew somebody who did have something.

62.     The officer told Plaintiff that if he was not going to tell him anything, they would tear apart Plaintiff's apartment.

63.     Plaintiff repeatedly stated that he did not have anything, or knew anybody who did.

64.     Defendant-Officers then intentionally ransacked and tore up Plaintiff's apartment, including kicking and breaking things, and putting holes in the wall.

65.     Defendant-Officers seized and converted valuable basketball cards that belonged to Plaintiff, including Michael Jordan, Larry Bird, and Patrick Ewing cards.

66.     Police Officers seized and converted about $600.00 in United States currency that belonged to Plaintiff.

67.     Defendant-Officers seized and converted Plaintiff's cellular phone.

68.     After a while, all the police officers left except two.

69.     The two that stayed behind told Plaintiff that they wanted to work with him.

70.     The officers explained that they had caught someone on the streets who gave them Plaintiff's name. They further explained that when they catch people, they tell them that they will be released if they give the police someone else's name.

71.     There is a practice in the Chicago Police Department for police officers to promise to release a person who is under arrest (or has been seized or stopped or otherwise in Chicago police custody) if the person gives the police the name of a person who has contraband. In this situation, the person has a motive to say anything to get released, and typically gives the police a name along with false or stale information about someone.

72.     One of the two remaining officers pulled out a long ziploc bag with narcotics and bullets. The officer said to Plaintiff, "This ain't much, but this is enough to send you to jail if we put it on you."

73.     The other officer stated that framing Plaintiff for a case for possession of drugs or bullets would be a waste of time since Plaintiff didn't have any background. The officer said, "That ain't gonna stick. That would be a waste of time."

74.     The officer with the bag asserted that they could still arrest Plaintiff, send him to the jail, and make him go "through the motions."

75.     The two Defendant-Officers took Plaintiff outside to their police car.

76.     While at their car, the officers explained that there were some guys in the neighborhood they wanted to go after, and they needed Plaintiff to go to court and help them get a search warrant.

77.     Plaintiff explained that he did not know anything about the people the officers were talking about. Plaintiff further explained that he would be worried about these people coming after him if he named them.

78.     An officer told Plaintiff that there would be nothing to worry about since Plaintiff would be only known as "John Doe" on all the papers.

79.     The Defendant-Officers took Plaintiff to the police station at Harrison and Kedzie.

80.     At the station, the officers showed Plaintiff some pictures and asked Plaintiff if he knew the people.

81.     Plaintiff said that he did not know the people.

82.     The Defendant-Officers told Plaintiff that the people in the pictures were the officers wanted Plaintiff to falsely claim that he saw with guns and drugs in their house so that the officers could get a search warrant. The officers again explained to Plaintiff that he does not need to worry about them finding out who Plaintiff was since he was going to be "John Doe."

83.     The two officers told Plaintiff that only they (the two police officers) would know his true identity.

84.     The officers told Plaintiff that not even the judge would know Plaintiff's real name.

85.     One of the officers gave Plaintiff his phone number and told Plaintiff to call him the next day between 1 and 2 o'clock to find out when Plaintiff had to come to court for the search warrant.

86.     Plaintiff never called the officer.

87.     Even though Plaintiff's person and his apartment were thoroughly searched on four different occasions, no contraband or evidence of criminal activity was ever found. Plaintiff was not charged with anything as a result of any of the searches.

88.     Each individual Defendant-Officer acted willfully, wantonly, maliciously,

6

oppressively, and with a conscious disregard and deliberate indifference to Plaintiff's rights.

89.    As a direct and proximate result of the acts of the Defendants described above, Plaintiff has suffered and continues to suffer damages including loss of physical liberty, emotional distress, and physical pain and suffering.

## COUNT I
### (42 U.S.C. § 1983 – Excessive Force)

90.    Plaintiff realleges paragraphs 1 through 89 as if fully set forth herein.

91.    During the fourth search (December 2007), Defendant-Officers grabbed and kicked Plaintiff while he was handcuffed.

92.    Defendant-Officers violated Plaintiff's Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from the use of excessive and unreasonable force.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)    Enter judgment against Defendant-Officers,

b)    Award compensatory and punitive damages, as determined at trial,

c)    Award attorneys' fees and costs, and

d)    Award any further relief that this Honorable Court deems just and equitable.

## COUNT II
### (42 U.S.C. § 1983 – Failure to Intervene)

93.    Plaintiff realleges paragraphs 1 through 89 as if fully set forth herein.

94.    While Plaintiff was subjected to excessive force during the fourth search (December 2007), Defendant-Officers had an opportunity to intervene, but chose not to intervene.

95.    Defendant-Officers were deliberately indifferent to Plaintiff's right to be free from excessive and unreasonable force.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)    Enter judgment against Defendant-Officers,

b)    Award compensatory and punitive damages, as determined at trial,

c)    Award attorneys' fees and costs, and

d)    Award any further relief that this Honorable Court deems just and equitable.

## COUNT III
### (42 U.S.C. § 1983 – False Arrest/Imprisonment)

96.    Plaintiff realleges paragraphs 1 through 89 as if fully set forth herein.

97.    After the fourth search (December 2007), Defendant-Officers took Plaintiff to the police station even though no contraband or evidence of criminal activity was found during the search.

98.    Defendant-Officers did not have an arrest warrant, probable cause, reasonable suspicion, or any other lawful basis to arrest or detain Plaintiff.

99.    The arrest of Plaintiff without any legal justification or probable cause violated his Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable seizures.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)    Enter judgment against Defendant-Officers,

b)    Award Plaintiff compensatory and punitive damages,

c)    Award attorneys' fees and costs, and

d)    Award any further relief that this Honorable Court deems just and equitable.

## COUNT IV
### (42 U.S.C. § 1983 – Substantive Due Process, Egregious Abuse of Power)

100.    Plaintiff realleges paragraphs 1 through 89 as if fully set forth herein.

101.    Defendant-Officers repeatedly harassed Plaintiff and searched his home.

102.    During the fourth search (December 2007), Defendant-Officers threatened to frame Plaintiff for other crimes unless he falsely claimed under oath that he knew certain people to have contraband so that Defendant-Officers could obtain a search warrant.

103.    Defendant-Officers conduct was an egregious and arbitrary abuse of government power that shocks the conscience.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)    Enter judgment against Defendant-Officers,

b)    Award compensatory and punitive damages, as determined at trial,

c)    Award attorneys' fees and costs, and

d)    Award any further relief that this Honorable Court deems just and equitable.

<u>COUNT V</u>
**(42 U.S.C. § 1983 – *Monell* Claim against the CITY OF CHICAGO)**

104.    Plaintiff realleges all of the above paragraphs and counts, as if fully set forth herein.

105.    At all times material to this Complaint, there existed in the City of Chicago the following practices, policies and customs:

a.    Promising persons in police custody that they will be released if the persons give them information about someone who has drugs or contraband. This practice often causes a person to give false and/or stale information about a person just so they can be released. The officers use the information to obtain a search warrant and search an innocent person's house.

b.    Stopping, detaining, arresting, and searching persons without a warrant, probable cause, reasonable suspicion, consent, or any other legal basis,

c.    searching person's vehicles without a warrant, probable cause, reasonable suspicion, consent, or any other legal basis,

d.    searching person's homes without a warrant, probable cause, reasonable suspicion, consent, or any other legal basis,

e.    arbitrary use of excessive force against suspects, arrestees, detainees and other civilians,

f.    denial of substantive due process, abuse of legal process, malicious prosecution, and filing of false charges against innocent persons,

g.    mental abuse, oral abuse and assault of arrestees, detainees, and other civilians,

h.    preparing false and incomplete police reports, and/or not preparing police reports, to cover up police misconduct including unconstitutional searches and seizures,

i.    filing false charges and pursuing baseless prosecutions in order to protect police officers from claims of improper conduct and avoid liability,

j.    a *code of silence* in which police officers fail to report police misconduct,

k.    said *code of silence* also includes police officers either remaining silent or giving false and misleading information during trials and official

investigations to cover up misconduct, and protect themselves and other officers,

l.      failure to adequately train, supervise and discipline police officers in the categories and fields of police work addressed above,

m.      failure to adequately investigate citizen complaints against police officers,

n.      failure to adequately discipline police officers for misconduct,

o.      through the Office of Professional Standards (OPS), conducting inadequate and deficient investigations of citizen complaints of police misconduct in which an officer is rarely disciplined, thereby encouraging even more police misconduct,

106.    The actions of the Defendant-Officers as alleged in this Complaint were done pursuant to, and as a result of, one or more of the above *de facto* practices, policies and customs of the CITY OF CHICAGO, the Chicago Police Department, and its police officers.

107.    The practices, policies and customs described above are widespread, permanent and well-settled, and were known, or should have been known, to the municipal policy-makers of the CITY OF CHICAGO.

108.    The municipal policy-makers of the CITY OF CHICAGO acted with deliberate indifference in maintaining, overlooking and preserving the unconstitutional practices, policies and customs delineated above.

109.    By their inaction and failure to correct the above-described practices, policies and customs, municipal policy-makers tacitly approve and thus indirectly authorize the type of misconduct Plaintiff complains of herein.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)      Enter judgment against Defendant CITY OF CHICAGO,

b)      Award compensatory damages, as determined at trial,

c)      Award attorneys' fees and costs, and

d)      Award any further relief that this Honorable Court deems just and equitable.

## COUNT VI
### (Indemnification Claim pursuant to 745 ILCS 10/9-102)

110.    The acts of the individual Defendant-Officers described in the above claims were

10

willful and wanton, and committed in the scope of employment.

111.    Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant CITY OF CHICAGO is liable for any judgments in this case arising from the actions of the Defendant-Officers.

WHEREFORE, Plaintiff asks that this Honorable Court order Defendant CITY OF CHICAGO to indemnify the Defendant-Officers for any judgment entered in this case arising from their actions.

**Jury Trial Demanded**

Respectfully submitted,

/s/ Lawrence V. Jackowiak
*Counsel for the Plaintiff*

Lawrence V. Jackowiak
Louis J. Meyer
Daniel P. Kiss
Law Offices of Lawrence V. Jackowiak
20 North Clark Street, Suite 1700
Chicago, Illinois 60602
(312) 795-9595